CINCINNATI (CITY), Plaintiff-Appellee, v HAWKINS, Defendant-Appellant.

Ohio Appeals, First District, Hamilton County.

No. 6790. Decided June 16, 1947.

John D. Ellis, Cincinnati, Robert J. Paul, Cincinnati, and Don Burkholder, for plaintiff-appellee.

Harry S. Williams, Jr., Cincinnati, for defendant-appellant.

## OPINION

By ROSS, J.

This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton County, affirming a conviction of possessing policy slips by the Municipal Court of Cincinnati.

The prosecution was based upon an ordinance of the City of Cincinnati, section 901-G3, which provides:

"Gambling, Lottery Slips, Etc. It shall be unlawful for any person knowingly to have in his possession, or in his custody, or in his control, any writing, paper or document representing or being a record of any chance, share or interest in any scheme of chance known as 'policy,' 'numbers game,' 'clearing house,' or by words of similar import. It shall further be unlawful for any person knowingly to have in his possession, or in his custody, or under his control, any paper, print, writing, or policy slip, device or article of any kind such as is commonly used in carrying on, prompting or playing any lottery or scheme of chance contrary to the provisions of Sections 901-G1 and 901-G2, or contrary to any law of the state of Ohio. Any violation of this section shall be punishable by a fine of not more than fifty dollars ($50.00)."

The affidavit, filed as a basis for the prosecution contained the following allegations:

"Thomas Kaufman, being first duly cautioned and sworn, deposeth and saith that one Pauline Hawkins, on or about the 3rd day of April, A. D., 1946, at and in the City of Cincinnati, County of Hamilton, and State of Ohio, did then and there unlawfully, knowingly, and wilfully have under her control certain writings representing or being a record of a share or interest in numbers used in promoting lottery, policy or lottery

by whatsoever name known, contrary to and in violation of Section 901-G3 of the Code of Ordinances of the City of Cincinnati."

The evidence presented to the trial court consisted in the testimony of certain police officers that they had arrested the defendant, took from her possession a purse containing a small loose leaf note book and some currency "crushed" into it, that in the opinion of the officers such memoranda were "memorandums of numbers on stocks and bonds better known as policy slips." The "memorandums" consisted of a small loose leaf note book, upon the pages of which were written many numbers, such as "7055-3773-6373-7371-73110-1462," etc. There was nothing in the note book to indicate in the slightest degree to what such numbers referred, nor was any evidence outside the opinions of the police officers introduced to suggest their connotation. Nothing was found on the defendant to indicate their purpose or use.

The police officers, however, testified they had made hundreds of arrests of persons possessing so-called "policy slips."

The defendant introduced no evidence.

Does the record show the guilt of the defendant beyond a reasonable doubt?

This question presents another inquiry. What effect has the failure of the defendant to introduce evidence upon the main question?

The officers qualified as experts upon what and what are not "policy slips" or unlawful memoranda used in connection with what is commonly known as the "numbers game." They testified positively, based on such experience, that the memoranda found in possession of the defendant "crushed" in with some considerable amount of currency were notations used in connection with the unlawful practice charged in the affidavit and covered by the ordinance.

It may be apparent that to permit the conviction of a citizen upon such a charge, merely because he has in his or her possession a note book containing a list of numbers, unidentified in anyway as associated with anything unlawful, is jeopardizing liberty guaranteed by the Constitution. On the other hand, if such memoranda were in fact innocent in character or had reference to any legitimate purpose, would not the effect of such inference be immediately dispelled by a plausible explanation by the defendant?

It must be admitted that the prima facie inference of guilt created by the evidence of the prosecution was not as sturdy

as could be wished, but still it is also clear that it was sufficient to call upon the defendant to make some explanation. The prosecution is not relieved from proving the guilt of the defendant beyond a reasonable doubt under any circumstances. The failure of the defendant to introduce evidence dispelling an inference of guilt created by the evidence of the prosecution can now since the amendment of the Constitution in 1912 be considered with evidence in reaching a conclusion of guilt. 12 O. Jur. p. 296, Sec. 291, Criminal Law.

At page 472 of the opinion in the case of **Leonard, Jr., v State of Ohio, 100 Oh St 456,** it is stated:

"Formerly, under the old constitution, the failure of the defendant to testify, raised no presumption of guilt; but upon the contrary, he was presumed to be innocent. He might stand upon his silence if he saw fit to do so, and no comment could be made upon that silence, nor any inference drawn by the court or jury as to his guilt. But the new Constitution of 1912 very substantially changed these inferences. An amendment thereto made it not only proper for the prosecuting attorney to comment upon defendant's failure to take the witness stand, but made it a proper matter for courts to consider in determining whether or not from the whole record he was legally and rightfully convicted."

See, also: **Burke v Cincinnati, 9 Abs 272; Sturgill v State, 12 Abs 193.**

Upon the entire record, this Court finds no reason for setting aside the judgments of the Municipal Court and the Common Pleas Court, and the judgment of the latter court is affirmed.

MATTHEWS, PJ, ROSS and HILDEBRANT, JJ, concur in Syllabus, Opinion and Judgment.